**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CAROLINE RAMONA PADILLA,

           Plaintiff,

vs.

Case No. 6:14-cv-1238-Orl-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Caroline Ramona Padilla ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of seizures, asthma, "neck problems," and "back problems." See Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed December 1, 2014, at 226 (emphasis and capitalization omitted). Plaintiff filed her applications in May 2010, alleging an onset date of July 1, 2009. Tr. at 182-85 (DIB); Tr. at 204-05 (Disability Report).[2] Plaintiff's applications were denied initially, Tr. at 95, 100-02 (DIB); Tr. at 96, 99,

---

    [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed December 1, 2014; Reference Order (Doc. No. 15), entered December 3, 2014.

    [2] The administrative transcript does not include Plaintiff's SSI application, but it is clear that both applications were filed in May 2010. See Tr. at 204-05. Although the filing date listed on the DIB application, May 19, 2010, Tr. at 182, differs from the date on the Disability Report, May 14, 2010, Tr. at 205, the discrepancy is immaterial to the issues presented here.

104-05 (SSI), and were denied upon reconsideration, Tr. at 97, 110-11, 114 (DIB); Tr. at 98, 112-13, 115 (SSI).  On November 11, 2011, Plaintiff moved to amend her alleged onset date to August 1, 2010.  Tr. at 175.

At a hearing held on December 20, 2011, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by counsel.  Tr. at 35-86.  During the hearing, the ALJ acknowledged Plaintiff's amended onset date.  Tr. at 37-38.  Plaintiff was fifty-two (52) years old at the time of the hearing.  Tr. at 42.  On March 7, 2012, the ALJ issued a Decision finding Plaintiff not disabled "from August 1, 2010, through the date of th[e D]ecision," and denying Plaintiff's claim.  Tr. at 26; see Tr. at 19-27.  Plaintiff then requested review by the Appeals Council ("AC"), Tr. at 13, and submitted evidence to the AC in the form of a brief authored by her attorney and a Physical Residual Functional Capacity Questionnaire completed by Dorna Broome-Webster, M.D., Tr. at 4; see Tr. at 317-21 (attorney's brief); Tr. at 1062-66 (questionnaire).  On May 30, 2014, the AC denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3.  On July 30, 2014, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: (1) whether "[t]he ALJ failed to offer good cause for rejecting the opinions of [Plaintiff]'s treating physicians"; and (2) whether "[t]he [AC] erred by denying review because [Plaintiff] presented new, material evidence showing that she was disabled."  Plaintiff's Memorandum of Law (Doc. No. 17; "Pl.'s Mem."), filed February 2, 2015, at 2; see id. at 14-25.  Defendant filed a Memorandum in Support of the

Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") on April 10, 2015.  After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated below.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four of the five-step sequential inquiry, where his inquiry ended based on his step four finding.  See Tr. at 21-26.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 1, 2010, the alleged onset date." Tr. at 21 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: pseudo seizure disorder, degenerative disc disease, asthma, and hyperlipidemia." Tr. at 21 (emphasis and citation

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 22 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work . . . as [Plaintiff] is able to lift or carry twenty pounds occasionally and ten pounds frequently; is able to stand or walk for a total of six hours in an eight-hour workday; and is able to sit for a total of six hours in an eight-hour workday. Additionally, [Plaintiff] is able to occasionally stoop or crouch; but she must never engage in climbing ladders, ropes, or scaffolds. [Plaintiff] must also avoid concentrated exposure to extreme cold, humidity, and irritants such as dusts, fumes, and gasses. Finally, [Plaintiff] must avoid concentrated exposure to workplace hazards such as dangerous or moving machinery or heights.

Tr. at 23 (emphasis and citation omitted). At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a baby sitter, cashier II, housekeeper, and sales attendant." Tr. at 26 (emphasis omitted). The ALJ stated that "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 26 (emphasis and citation omitted). Because the ALJ found Plaintiff is capable of performing her past relevant work, the ALJ was not required to and did not proceed to step five. The ALJ concluded that Plaintiff "has not been under a disability . . . from August 1, 2010, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions

of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The two issues Plaintiff raises are addressed in turn below.

### A. Medical Opinions

Plaintiff argues that "[t]he ALJ did not offer good cause for rejecting the opinions" of Plaintiff's treating physicians, Ralph J. Zwolinski, M.D., and Marcelo Anayas, M.D. Pl.'s Mem. at 14 (emphasis omitted); see id. at 14-22. Below, after setting out the applicable law, the undersigned addresses the opinions at issue here, as follows: first, opinions authored by

Dr. Zwolinski in 2005 and 2006; and second, opinions separately authored in 2011 by Dr. Zwolinski and Dr. Anayas. See Pl.'s Mem. at 15-22.

### 1. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[5] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-6-

"are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (11th Cir. 1981)

(citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

2.  Dr. Zwolinski's 2005 and 2006 Opinions

Dr. Zwolinski treated Plaintiff primarily for her pseudo-seizure disorder from August 2003 to September 2011.  See Tr. at 542-81 (treatment notes from August 12, 2003 to July 14, 2010); Tr. at 755-58 (treatment notes from August 24, 2010 to January 24, 2011); Tr. at 738-52 (treatment notes from March 22, 2011 to September 29, 2011).  At issue here are opinions from February 16, 2005 and August 29, 2006.  See Motion at 15-17; Tr. at 554, 567-68.[6]  In Dr. Zwolinski's February 16, 2005 treatment note, he addressed Plaintiff's pseudo-seizure disorder and opined, "I don't think it would be unreasonable for [Plaintiff] to consider limited hours of employment and a low stress setting."  Tr. at 567.  In his August 29, 2006 note, Dr. Zwolinski set out Plaintiff's "permanent restrictions for work," including that Plaintiff "can work 8-5 and no lifting greater than 10 pounds"; that "[s]he is not to do any pushing or

---

[6] Plaintiff cites Dr. Zwolinski's treatment notes at pages 555 and 567 of the administrative transcript. See Pl.'s Mem. at 15 (citing Tr. at 567 for the 2005 opinion; citing Tr. at 555 for the opinion from "[t]he following year").  The treatment note at page 555 of the administrative transcript is essentially a copy of the August 29, 2006 treatment note located at page 554, but one difference is that the copy at page 555 does not include Dr. Zwolinski's signature.  Compare Tr. at 554 with Tr. at 555.

pulling"; that "[s]he is not to climb any ladders"; and that "[s]he is not to work near any heavy equipment." Tr. at 554.

Addressing these opinions, the ALJ stated that they "are far removed in time from the most relevant and reliable evidence of record." Tr. at 24. He further stated that the opinions "are inconsistent with the reliable evidence of record during the alleged period of disability, and other medical opinions of record are more consistent with such evidence." Tr. at 24 (citation omitted). Moreover, regarding Plaintiff's pseudo-seizure disorder diagnosis, the ALJ noted Plaintiff's statements that her medication is helping and that she had resumed driving a car about six months before the hearing. Tr. at 24; see Tr. at 56-57 (hearing testimony). The ALJ also observed that "repeated labs, carotid ultrasounds, EKGs, and CT brain scans have all failed to show significant pathology." Tr. at 24.

Plaintiff argues "the medical evidence is fully consistent with Dr. Zwolinski's statements." Pl.'s Mem. at 15. First, Plaintiff takes issue with the ALJ's observations regarding the lack of significant pathology and the helpfulness of medications. Id. at 15-16. Plaintiff asserts that because pseudo-seizure disorder does not have a physical cause, it does not show up on the scan imaging and is not helped by anti-epileptic medications. Id. at 16. Second, Plaintiff argues that the opinions should not have been discounted for datedness because, according to Plaintiff, records show her conditions are permanent and continue to cause pseudo-seizures and "numerous trips to the emergency room." Id. at 17 (citations omitted).

The undersigned finds the ALJ properly discounted the opinions as being "far removed in time" from, and inconsistent with, reliable evidence from around the relevant period. Tr.

-9-

at 24. The latest of the two opinions was issued almost four years before Plaintiff's alleged onset date of August 1, 2010, when Plaintiff ended her full-time employment. See Tr. at 37-38, 44-46. As to Plaintiff's seizures, despite her contentions, she fails to point to any evidence in the record showing that they constituted a disabling condition during the relevant period. Indeed, Plaintiff herself indicated at the hearing that her last seizure had occurred in July 2010, about a year and a half before the hearing. See Tr. at 56. Substantial evidence in the record supports the ALJ's finding that medications are helping to reduce the seizures. See Tr. at 56, 554. Furthermore, as to Plaintiff's impairments and complaints of pain generally, the ALJ correctly noted evidence of malingering that undermines Plaintiff's credibility. See Tr. at 24, 426-27, 550, 552, 749, 751, 757.

Upon review of the record as a whole, the undersigned finds substantial evidence supports the ALJ's determination to discount Dr. Zwolinski's February 2005 and August 2006 opinions. See, e.g., Tr. at   425-27, 542-43, 554, 683, 736-46, 749, 884-85.

### 3. Dr. Zwolinski's and Dr. Anayas's 2011 Opinions

At issue are respective Medical Verification Forms completed in 2011 by treating physicians Dr. Zwolinski and Dr. Anayas. See Motion at 17-22; Tr. at 778-79, 782. Dr. Zwolinski completed a Medical Verification Form on September 16, 2011. Tr. at 782. He indicated on the form that Plaintiff cannot work either sitting down or standing up, that she can volunteer hours "[o]nly if frequent breaks are permitted," and that she can attend school or classes "with liberal accommodations." Tr. at 782. Dr. Anayas, who treated Plaintiff between August 2010 and August 2011, completed Medical Verification Forms on February 4, 2011 and September 16, 2011. Tr. at 778 (February form); Tr. at 779 (September form);

see also Tr. at 1049-52 (treatment notes from August 11, 2010 and August 5, 2011).[7]  Dr. Anayas indicated on these forms that Plaintiff is unable to work either sitting down or standing up, and on the February form he indicated that Plaintiff is "[u]nable to 'work' at all."[8]  Tr. at 778, 779.  Dr. Anayas also indicated that Plaintiff's condition is permanent and that she cannot volunteer or attend classes.  Tr. at 778, 779.

The ALJ "very little weight" to Dr. Zwolinski's and Dr. Anayas's respective 2011 opinions on the Medical Verification Forms, concluding that "they are wholly inconsistent with [Plaintiff]'s own admissions[] and the other reliable opinions of record."  Tr. at 25.  The ALJ further stated that the 2011 opinions "are inconsistent with the findings of multiple examining sources during multiple other physical examinations," and that "both [doctors'] opinions appear to be ultimate conclusions that cover an issue reserved to the Commissioner."  Tr. at 25 (citations omitted).  As opposed to these treating opinions, the state agency examiners' opinions were given "great weight" in part because the ALJ found "they were accompanied by detailed explanations, after a full review of the entirety of the medical evidence."  Tr. at 25.

Plaintiff argues that the ALJ's reasons are all "contrary to the evidence or to the Commissioner's [R]egulations."  Pl.'s Mem. at 17-18.  Regarding her testimony, Plaintiff asserts that it "echoes the doctors' opinions in all important respects" and describes more limited daily activities than the ALJ described.  Id. at 18.  Plaintiff also contends, regarding the medical evidence, that only the opinion of a single consultative examiner, David W.

---

[7]  Elsewhere in the administrative transcript is a copy of the August 5, 2011 treatment note that is substantially similar, except that it does not list Plaintiff's medications.  See Tr. at 780-81.

[8]  Dr. Anayas did not check a corresponding box on the September 16, 2011 form to indicate whether Plaintiff is able to work some hours or "at all."  Tr. at 779.

Carpenter, M.D., is inconsistent with the treating opinions at issue. Id. at 19-20; see Tr. at 425-30 (Dr. Carpenter's examination record and assessment). Furthermore, Plaintiff also argues that the ALJ unreasonably relied on the medical evidence to find that her back pain improved. Pl.'s Mem. at 20-21. Finally, as to whether the opinions reached an "ultimate issue," Plaintiff asserts that this "was not sufficient reason for rejecting them." Id. at 22.

Notwithstanding Plaintiff's arguments, for the reasons discussed above, the undersigned finds that substantial evidence in the record supports the ALJ's finding as to Dr. Zwolinski's and Dr. Anayas's respective 2011 opinions as well as the ultimate finding that Plaintiff is not disabled. See, e.g., Tr. at  425-27, 542-43, 554, 683, 736-46, 749, 884-85.

**B. New Evidence Presented to the AC**

Plaintiff argues that the AC "erred by denying review because [Plaintiff] presented a new, material opinion from a treating source, and there is a reasonable possibility that this new evidence would have changed the ALJ's [D]ecision." Pl.'s Mem. at 22 (emphasis omitted).

When the AC is presented with evidence that was not presented to the ALJ, the AC is required to consider the evidence if it is "new, material, and chronologically relevant." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.970(b)). Further, the AC "must review the case if 'the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Id. (quoting 20 C.F.R. § 404.970(b)). In the event the AC considers new evidence but denies review, the AC is not required to articulate its reasons for denying review. See Parks v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 852-53 (11th Cir. 2015) (citation omitted) (finding that the AC "was not

required to do more" than "consider[] the new evidence . . . and . . . add[] the evidence to the record"); Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 785 (11th Cir. 2014).

If a claimant challenges the Appeals Council's denial, a reviewing court must determine whether the new evidence renders the denial of benefits erroneous. See Mitchell, 771 F.3d at 784-85 (citing Ingram, 496 F.3d at 1262); see also Levie v. Comm'r of Soc. Sec., 514 F. App'x 829, 832-33 (11th Cir. 2013) (citation omitted); Kalishek v. Comm'r of Soc. Sec., 470 F. App'x 868, 869 (11th Cir. 2012) (citation omitted); Coleman v. Comm'r of Soc. Sec., 454 F. App'x 751, 754 (11th Cir. 2011) (citation omitted) (noting that "[t]he Appeals Council may deny review if the new evidence does not show the ALJ's decision to be erroneous"). In other words, to obtain a remand from a federal district court under sentence four of 42 U.S.C. § 405(g), "[a] claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 902 (11th Cir. 2013) (citing Ingram, 496 F.3d at 1266-67); see also Mitchell, 771 F.3d at 785 (citations omitted) (finding that "[t]he additional evidence was either cumulative of evidence before the ALJ or was not chronologically relevant, and none of it undermined the substantial evidence supporting the ALJ's decision").

At issue here is a single questionnaire completed by Dr. Broome-Webster on June 8, 2012, that Plaintiff submitted as additional evidence to the AC. See Tr. at 4 (AC Exhibits List); Tr. at 1062-66 (Physical Residual Functional Capacity Questionnaire). According to the questionnaire, Dr. Broome-Webster had contact with Plaintiff "since 2/7/12," although it is unclear when or how often. Tr. at 1062. Among Dr. Broome-Webster's observations on the

form, she wrote that Plaintiff suffers from constant pain that is "10/10 in severity" and that Plaintiff is restricted to lifting less than ten pounds ("[r]arely" and "[o]ccasionally") and sitting or standing for less than two hours in an eight-hour workday. Tr. at 1062-64. The AC, in denying Plaintiff's request for review, stated that it considered this evidence but "found that [it] does not provide a basis for changing the [ALJ's D]ecision." Tr. at 1-2.

Plaintiff argues that the AC erred because Dr. Broome-Webster's opinion is new, chronologically relevant, and material evidence. Pl.'s Mem. at 23-24. She asserts the evidence is material because it "corroborates" the other treating-source opinions that the ALJ discounted. Id. at 23 (citations omitted). Plaintiff contends that "treatment notes from the other medical sources are more than sufficient to corroborate Dr. Broome-Webster's findings." Id. at 24.

Reviewing Dr. Broome-Webster's opinion in conjunction with the rest of the evidence in the record, the undersigned finds that the new evidence does not render the denial of benefits erroneous. Among other considerations, the undersigned notes that the record lacks any supporting treatment records from Dr. Broome-Webster or any clear indication as to how often or to what extent she treated or examined Plaintiff. Without such information, it is difficult to assess the opinion's reliability, particularly in light of evidence that Plaintiff exaggerated her symptoms. See Tr. at 24, 426-27, 550, 552, 749, 751, 757. The undersigned finds that the decision to deny benefits remains supported by substantial evidence. See.e.g., Tr. at 425-27, 542-43, 554, 683, 736-46, 749, 884-85.

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1.	The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of § 405(g) **AFFIRMING** the Commissioner's final decision.

2.	The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 29, 2016.

_____
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record